In re THRIFTY LIQUORS, INC., et al., Debtors.

Bankruptcy No. 82–904–L et seq.

United States Bankruptcy Court, D. Massachusetts.

Nov. 30, 1982.

Terry P. Segal, Segal, Moran & McMahon, Boston, Mass., trustee.

Stephen M. Richmond, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for trustee.

Christopher W. Parker, Craig & Macauley, P.C., Boston, Mass., for debtors.

Robert Somma, Robert F. Wechsler, Goldstein & Manello, Boston, Mass., for Official Committee of Unsecured Creditors.

Jon D. Schneider, Goodwin, Procter & Hoar, Boston, Mass., for debtor's stockholder, John C. Turner.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE TRUSTEE'S ADVERSARIAL MOTION FOR AUTHORIZATION TO SELL STORE ASSETS AND ENTER INTO MANAGEMENT AGREEMENT.

THOMAS W. LAWLESS, Bankruptcy Judge.

This matter came on for hearing on November 24 and 29, 1982, on the Trustee's Adversarial Motion for Authorization to Sell Store Assets and Request for Emergency Hearing at which time evidence was presented and oral arguments were heard.

In accordance with Bankruptcy Rule 752, the following constitutes this Court's findings of fact and conclusions of law.

FACTS

1. On May 21, 1982, the Debtor, Thrifty Liquors Inc., filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 1101 *et seq.* ("Code") and began operating its business as a debtor-in-possession.

2. Terry P. Segal was subsequently appointed Trustee in these proceedings, duly qualified, and is presently acting in said capacity. On November 19, 1982, the Trustee filed with the Court a Notice of Intention to Sell Assets of Thrifty Liquors, Inc.

3. Prior to the commencement of these proceedings, the Debtor was engaged, *inter alia,* in the business of operating a retail liquor store at 215 Alewife Brook Parkway, Cambridge, Massachusetts. The store premises are leased by the Debtor pursuant to a lease and the Debtor has other rights against its lessor, now the subject of litigation in the state courts.

4. Substantial operating losses have occurred during the course of these proceedings as a result of the Debtor's inability to obtain sufficient credit and lack of adequate working capital to compensate for the insufficient cash position of the Debtor's business.

5. The Trustee's inability to obtain credit to adequately stock the store's inventory presents a substantial likelihood that the Debtor's business will experience continuing losses during the next several months and said operation will be unable to capitalize on the business opportunity presented by the coming holiday season.

6. Pursuant to section 1106 of the Code, the Trustee has widely solicited participation in a Plan of Reorganization, or alternatively the purchase of the Debtor's assets as a going business. Indeed the assets were previously exposed for sale by the trustee

and the highest bid received was $65,000.00. I find that the reason for the low bid was the unwillingness of bidders to go higher because the lease under which the store was being operated was to expire in 1984. I further find that the trustee realized this, and as a result of negotiations with the landlord, succeeded in gaining an extension of the term of the lease to 1989. It is because of the trustee's success in this endeavor that the price now offered is available.

7. The Trustee has received a proposal from Lawrence A. Weiner ("Weiner"), or his nominee, to purchase all of the assets of the Debtor for $300,000.00. These assets include: the inventory located in the store on the date of closing to be purchased at wholesale beverage cost (in addition to the $300,000.00 sale price); all furniture, fixtures and equipment located in the store; the assignment of any and all rights of the Debtor against the lessor of the store premises; the alcoholic package store license; and the exclusive use of the name "Thrifty Liquors" and derivations thereof. The sale is to be free and clear of all liens, encumbrances and security interests.

8. The offer by Weiner to purchase the store assets is supported by the Creditors' Committee and is in the best interests of the estate.

9. The Trustee has no connection with the proposed purchaser and there is no evidence that the purchaser is anyone other than a good faith purchaser for value.

10. The offer to purchase is conditioned upon the Trustee's acceptance of same on or before November 30, 1982. This limitation is not a self-created emergency as the store assets have a peculiarly high value at this time of year which will severely diminish if the sale is not consummated at this time.

11. The plan of reorganization filed by the Debtor on November 24, 1982, proposes a dividend to unsecured creditors that is less than what would be received under the proposed sale to Weiner.

12. Additionally, the proposed plan of reorganization faces a number of obstacles which not only renders confirmation highly speculative, but presents a distinct possibility of severe diminution of the value of the estate and the loss of the advantageous offer during the disclosure and confirmation process.

## CONCLUSIONS OF LAW

 The Court is loath to interfere with the Trustee's business decision in regard to the execution of this management agreement and the propriety of the proposed sale. 11 U.S.C. § 1108 provides that "[u]nless the court orders otherwise, the trustee *may* operate the debtor's business." (emphasis added). The use of the permissive "may" clearly indicates that a trustee is not required to operate the debtor's business and, necessarily implies the lesser authority to modify the operation of the business on such grounds as he deems appropriate under the circumstances. See *In re Curlew Valley Associates,* 14 B.R. 506 (Bkrtcy.D.Utah 1981); *In re Airlift International Inc.,* 18 B.R. 787, 8 B.C.D. 1196 (Bkrtcy.S.D.Fla.1982). The Court cannot order the Trustee to continue operation of the Debtor's business and, absent a showing that the proposed termination or modification is an abuse of discretion unsupported by any factual basis and/or not in the best interests of creditors, the Trustee's good faith business judgment regarding the proposed transaction should not be disturbed. See *In re Curlew Valley Associates, supra,* at 513; *In re Airlift International Inc., supra,* 18 B.R. 787, 8 B.C.D. at 1197.

 The continuing erosion of the Debtor's assets and the severe diminution in the value of those assets which is likely to occur in the future constitutes an emergency situation justifying the Trustee's decision and warranting the Court's authorization of the sale of all the Debtor's assets at this time pursuant to 11 U.S.C. § 105. See *In re White Motor Credit Corp.,* 14 B.R. 584 (Bkrtcy.N.D.Ohio 1981); *In re Whet, Inc.,* 12 B.R. 743 (Bkrtcy.D.Mass.1981). While ideally the proposed sale should take place in the context of a plan and disclosure statement, the Trustee's extensive solicita-

tion of offers for these assets and the Creditors' Committee vigorous representation in this matter provide ample insurance that the estate's best interests are being met and warrant, in light of the emergency situation, a sale of all of the assets prior to confirmation of a plan of reorganization. *See In re White Motor Credit Corp., supra; Solar Mfg. Corp.,* 176 F.2d 493 (3rd Cir. 1949); *In re Equity Funding Corp.,* 492 F.2d 793 (9th Cir.1974); *In re Boogaart of Florida, Inc.,* 17 B.R. 480 (Bkrtcy.S.D.Fla.1981); *In re Whet, Inc., supra.*

Accordingly, it is hereby

ORDERED:

1. That Terry P. Segal, Trustee in Reorganization of Thrifty Liquors, Inc., is hereby authorized to sell all of the assets of the Debtor including an assignment by the Debtor of any and all of its rights against its lessor of real property located on Alewife Brook Parkway in Cambridge, Massachusetts, to Lawrence A. Weiner or his nominee for the sum of Three Hundred Thousand ($300,000.00) Dollars plus the wholesale price for any and all inventory at the store premises on the date of closing, and it is further

ORDERED:

2. That Terry P. Segal, Trustee is hereby authorized to enter into a management agreement with the said purchaser pending the closing of the sale authorized herein.